UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

Case No.: 8:24-cr-429-CEH-CPT

WIESLAW ROBERT RUTA
Defendant.
_________________________________/

**DEFENDANT WIESLAW ROBERT RUTA'S SENTENCING MEMORANDUM AND MOTION FOR MITIGATING ROLE AND DOWNWARD VARIANCE**

The Defendant, WIESLAW ROBERT RUTA, by and through undersigned counsel, hereby files this Sentencing Memorandum in advance of the sentencing proceeding scheduled for August 26, 2026, at 10:00am. Mr. Ruta was charged by Indictment with 1) Conspiracy to possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine while upon the high seas and onboard a vessel subject to the jurisdiction of the United States and; 2) Possession with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine while upon the high seas and onboard a vessel subject to the jurisdiction of Unites States. Following a jury trial, Mr. Ruta was found not guilty of Count 1 and found guilty of Count 2. Mr. Ruta prays that the court enter a sentence that is fair, reasonable, and sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553 and a

sentence that gives weight to the jury's not guilty verdict in this matter. In support of such a sentence, Mr. Ruta offers the following:

**Background**

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States*, 131 S.Ct. 1229, 1240 (2011) (citing *Koon v. United States,* 518 U.S. 81, 113, 116 (1996)).

Born on December 8, 1967, during the USSR's communist rule over Poland, Mr. Ruta's life has been one of simplicity, basic essentials, and rooted in family. The conduct alleged in this case is outside of Mr. Ruta's character and inconsistent with the life he has lived for nearly 60 years. Mr. Ruta was devastated by his arrest and the jury's finding of guilt on Count 2 of the indictment. This matter has brought great heartache to his family and Mr. Ruta cannot bring himself to tell his 90-year-old mother of his arrest and conviction for fear that it may kill her.

In 2022 Mr. Ruta suffered a devasting emotional loss when he learned that his wife of 22 years was romantically involved with another man. Although their marriage ended in divorce, Mr. Ruta's love for his ex-wife never waned. Now, he lives with his ex-wife and their two sons together as a family in Poland. Mr. Ruta's life will never be the same following his conviction, and during his incarceration he will miss the simple and meaningful moments he spent with his sons taking them to mixed martial arts practice, training at the gym, and traveling with them to mixed martial

arts tournaments. He will miss his daily walks with his ex-wife to the seaside and most of all, the nightly dinners at home with his family. Mr. Ruta is heartbroken to know that his absence will make his family's life more difficult and his ex-wife will now seek social financial aid to assist in the payment of rent and food.

## I. THE SENTENCING GUIDELINES

Subject to review for reasonableness, district judges are now free to apply their own perceptions of just punishment, deterrence, and protection of the public even when these differ from the perceptions of the Commission members who drew up the guidelines. *United States v. Rodriguez*, 406 F.3d 1261, 1289 (11th Cir. 2005) (Tjoflat, J., dissenting) (citing *Booker*, 125 S.Ct. at 790 (Scalia, J., dissenting)).

Mr. Ruta has two primary objections to United States Probation's advisory guideline calculation as follows:

1) The Presentence Report ("PSR") fails to include a downward mitigating role adjustment for Mr. Ruta when a downward adjustment is warranted based on several factors including but not limited to Mr. Ruta's status as crew member, the lack of evidence at trial regarding Mr. Ruta's involvement in any planning, communication or coordination with others for the purpose of transporting drugs, and the jury's finding that Mr. Ruta was less culpable than his co-defendant at trial by its unanimous not guilty verdict on Count 1 and;

2) Mr. Ruta objects to the inclusion of an obstruction of justice enhancement in the PSR. United States Probation, after suggestion by the government, amended its initial PSR to include an obstruction of justice enhancement based on a subornation

of perjury theory. The United States government and United States Probation's apparent basis in support of its argument for a subornation of perjury/obstruction enhancement is, "The defendant knew that Mr. Winiewski was going to give this false testimony, as the jury was informed prior to the testimony that Winiewski was going to give the testimony". *PSR, p. 7, paragraph 22.* If this enhancement were to apply here, it would apply broadly and incorrectly to any defendant that calls a witness in his defense at trial without first requiring the government to prove that the defendant actively persuaded a witness to testify falsely or acted with intent to have that witness deceive the jury, which is what the law requires. *See 9th Circuit Model Criminal Jury Instruction for Subornation of Perjury, 24.15 (Model Criminal Jury Instructions for The District Courts of the Ninth Circuit, 2022 Edition, Last Updated June 2026* **(Exhibit 1).**[1]

***Objection #1: A Mitigating Role Should be Applied in Ruta's Case***

As of November 1, 2025, the mitigating-role adjustment operates differently as applied to individuals convicted of drug-trafficking offenses who served only a low-level trafficking function. Specifically, the amended § 2D1.1 has a new "special instruction" (at (e)(2)) for applying § 3B1.2 role reductions in drug trafficking cases. Under that instruction, role reductions can now be triggered solely by a person's primary function in the global drug-trafficking market and are not available only to those "substantially less culpable than the average participant" in the same criminal enterprise, as was previously the case. *Accord* U.S. Sent'g Guidelines Manual §

[1] Undersigned counsel could not find an 11th Circuit pattern jury instruction therefore a model instruction from the 9th Circuit was used for reference.

2D1.1(e)(2)(B) (U.S. Sent'g Comm'n 2025) (providing general availability of § 3B1.2 reductions based on a person occupying a low-level drug trafficking function) [hereinafter USSG] *with id.* § 2D1.1(e)(2) (providing that role reductions are available in single-defendant criminal offenses and regardless of individual's culpability relative to others in the same criminal conduct). To summarize, USSG § 2D1.1(e)(2)'s new text is expansive, instructing courts to apply the mitigating role reduction in far more drug-trafficking cases than § 3B1.2's generally applicable rules would permit.

Also, as the Eleventh Circuit held in *United States v. Cruickshank*, 837 F.3d 1182 (11th Cir. 2016), a defendant in Mr. Ruta's position is eligible for a role adjustment. And, USSG § 3B1.2 Application Note 3(C) provides "[f]or example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline. The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. "First and foremost, the district court must measure the defendant's role against the relevant conduct for which she has been held accountable. This measurement is compelled by both the Guidelines and our case precedent." *United States v. De Varon*, 175 F.3d 930, 940 (11th Cir. 1999).

As for Mr. Ruta, his involvement in this instant matter is among the lowest of functions within the drug trafficking enterprise and further, a jury unanimously determined Mr. Ruta was less culpable than a co-defendant within his own indictment when they found him not guilty of Count 1, the conspiracy count. While there is no way to know how the jury reached that decision, it is irrefutable that Mr. Ruta was

found by the jury to either not know of the unlawful plan to possess and distribute drugs, did not join the plan, or did not commit an overt act in furtherance of the plan. *See 18 U.S.C. § 371 and Jury Verdict.*

a. Measuring the Defendant's Role Against His Relevant Conduct

The *De Varon* analysis asks the Court to evaluate Mr. Ruta's role against his relevant conduct. *United States v. De Varon*, 175 F.3d 930, 940 (11th Cir. 1999). The Government often argues that defendants like to Mr. Ruta should not be evaluated as part of a larger conspiracy because he is only responsible for the weight of drugs on his boat. However, as Application Note 3(A) to USSG § 3B1.2 states, "A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline." Focusing on the weight of the drugs fails to take into account how everything about the offense conduct had already been coordinated when Mr. Ruta stepped onto the vessel. The weight of the drugs did not plan this trip, people did, and those people are part of the offense conduct. If this is a significant amount of drugs, which it is, then there are a significant number of people who have an interest in the success of this venture. These other individuals and their roles should not be ignored for mitigating role purposes. *De Varon* was concerned with a defendant making a minor role claim based on a "far-flung narcotics conspiracy." *De Varon*, 175 F.3d at 947. Yet, that is not the case here. Mr. Ruta does not ask the Court to compare his conduct to a far flung and vast, multinational drug-trafficking enterprise as the government often suggests. However,

he does request that the Court compare his conduct to other more culpable individuals like recruiters and masters but also to all the individuals that were involved in possessing and intending to distribute the drugs (735 kilos - not the millions of kilograms distributed by a multinational drug-trafficking organization) on the Nicollet.

The plan for the Nicollet was set in motion by individuals other than Mr. Ruta. We may not know the specific identities of all the people who took part in this 735 kilo conspiracy, but we know Mr. Ruta was not part of a conspiratorial plan with others. As we heard from the trial testimony the plan for the drugs did not originate with Mr. Ruta. At trial, testimony revealed that Mr. Winiewski and two individuals from Spain named Bogdan and Kamila were responsible for recruiting Mr. Winiewski who then, outfitted a boat, created a concealed compartment unknown to Mr. Ruta, determined how to obtain cocaine, coordinated with others regarding routes, supplies, and fuel, operated navigational equipment, and captained the vessel. And a fourth individual named Waldemar Elryk provided the vessel to be used, the "Nicollet". Even if Mr. Ruta could be said to have contributed to the possession onboard the Nicollet, the facts at trial established that he was merely present when the drugs were on board. This drug transport would have required many steps prior to departure and all these additional acts were part of the conspiracy and involved other more culpable people.

Furthermore, it is not as though the rigid guidelines give Mr. Ruta a break by holding him only responsible for the drugs on the Nicollet nor are the guidelines giving him a break for being found not guilty of Count 1. Mr. Ruta could be held responsible for significantly more drug weight coupled with a conviction on Count 1, and it would

not affect his Guideline calculation. Such a result is not fair or reasonable. The only way to take account for Mr. Ruta's lesser role under the Guidelines is through a mitigating role adjustment or a variance.

b. <u>Other Minor Role Factors to Consider</u>

Mr. Ruta's participation in the offense satisfies nearly all of the non-exhaustive list of factors found in Application Note 3(C) of § 3B1.2 and *DeVaron*.

*i. The degree to which the defendant understood the scope and structure of the criminal activity and the degree to which the defendant participated in planning or organizing the criminal activity. Application Notes 3B1.2 3(C)i and ii.*

The government typically argues that someone like Mr. Ruta understood the scope and structure of the criminal activity because he knew the task at hand was to navigate a trafficking amount of cocaine across the high seas, so that it could be smuggled into foreign countries. However, that argument fails here because Mr. Ruta was found by a jury to not have understood or participated in a conspiratorial plan. Therefore, there are many aspects of the offense conduct that Mr. Ruta simply was not a part of or lacked knowledge. After five days of trial there was no evidence put forth that Mr. Ruta was privy to 1) who owned the drugs, 2) who planned the weight of the drugs to be shipped, 3) who owned the boat, 4) who transported the boat and drugs to the launch location, 5) who wrapped the cocaine to prevent water contamination, 6) who planned the navigation route and ultimate destination locations, 7) who determined the recruiter for this trip, 8) who obtained the GPS device, and 9) who's money was used to fund the trip. All of these tasks which relate to scope, structure and planning were unknown to Mr. Ruta. The only evidence presented was that Mr.

had a single photo on his cell phone depicting the outside of the vessel after it was refurbished and two photos found on his co-defendant's phone of Mr. Ruta working on the vessel. These three photos of Mr. Ruta did not depict him working on the concealed compartment or anywhere inside the master stateroom where the drugs were recovered. Further, no evidence such as fingerprints or ioscan testing were presented to the jury to establish that Mr. Ruta's ever had actual possession of the drugs on the boat.

> *ii. The degree to which the defendant exercised decision making authority or influenced the exercise of decision making authority and the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts. Application Notes 3B1.2 3(C)iii and iv.*

Mr. Ruta had no decision-making authority or influence over any other person on the Nicollet and certainly not over others relevant to the conspiracy. The government often argues that Mr. Ruta was entrusted with a boat laden with a large amount of cocaine with a high street value and that fact should weigh against him receiving a mitigating role. However, there was no direct evidence that Mr. Ruta was entrusted by anyone with drugs, or a boat, or a GPS, or navigational routes. In fact, the only witness with direct knowledge of what occurred testified that Mr. Ruta had no knowledge and in fact Mr. Winiewski did not trust Mr. Ruta with information pertaining to drugs. Mr. Winiewski testified that he hired a crew for the purpose of distributing drugs, but that crew backed out so he then convinced Mr. Ruta to be crew member by deceiving him and not disclosing the true purpose of the trip. Mr. Ruta was merely a crew member without knowledge of the purpose of the trip. He did not

decide when the vessel would set sail or when it would come to port, and he would have been unable to operate the vessel on his own.

The street value of the drugs in the United States is also a poor indicator of Mr. Ruta's role. A more appropriate value in this case is the cost of production of those drugs to the people who planned these ventures, a number substantially less than street value. Cocaine is a renewable resource, and a lost shipment is replaceable by the next crop. Crewmembers like Mr. Ruta are expendable to the people who organize these voyages. If Mr. Ruta's was of some value to the organizers he would have been paid a large sum for his participation, but the only evidence presented at trial was that Mr. Ruta was not paid for transporting drugs. Rather, Mr. Winiewski testified he paid for Mr. Ruta's travel necessities and there was no agreement whereby Mr. Ruta would be paid for transporting drugs. And, because the Guideline calculation depends almost entirely on the weight of drugs in a case like this, crew members at the bottom of the hierarchy are punished more severely for the decisions of other people.

Accordingly, Mr. Ruta, requests the Court impose a -2 level downward mitigating adjustment pursuant to USSG § 3B1.2. After implementation of a -2 level downward mitigating role adjustment combined with the amended mitigating role base offense level cap, his total adjusted offense level before a variance is as follows:

Base Offense Level: 32

(For a Defendant that has a base offense level greater than 34 and received an adjustment under 3B1.2 for a mitigating role, a cap base offense level of 32 applies. 2D1.1(a)(5))

Minus 2 levels for mitigating role: 30

| | |
|---|---|
| Minus 2 levels for Zero Point Offender: | 28 |
| Total: | 28 |

***Objection #2: The Guidelines Should Not Include an Obstruction of Justice Enhancement For Suborning Perjury Simply Because a Defendant Calls a Witness to Testify in His Defense at Trial and the Jury Finds Him Guilty on One of the Two Counts.***

United States Probation, by its inclusion of an obstruction of justice enhancement for the crime of suborning perjury, is asking the court to apply a legally incorrect standard of proof for the federal crime of suborning perjury. The following model criminal jury instruction from the 9th Circuit sets forth what *is* required for the crime of suborning perjury.[2] The instruction is compelling because it clearly outlines the requirement of proof that a defendant must *voluntarily and intentionally persuade* a witness to commit perjury and *act with intent through said witness to deceive* the jury. That is simply not the case here.

Model Criminal Instruction
24.15 Subornation of Perjury
(18 U.S.C. § 1622)

The defendant is charged in [Count _______ of] the indictment with subornation of perjury in violation of Section 1622 of Title 18 of the United States Code. For the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

---

[2] Undersigned counsel could not find an 11th Circuit pattern jury instruction therefore a model instruction from the 9th Circuit was used for reference.

First, the defendant **voluntarily and intentionally persuaded [*name of witness*] to commit perjury;**

Second, the defendant **acted with the intent that [*name of witness*] would deceive the [court] [jury]; and**

Third, [*name of witness*] committed perjury in that:

(a) [he] [she] testified under oath or affirmation at [*describe proceeding*] that [*specify alleged false testimony*];

(b) the testimony given was false[, with all of you agreeing at to which statement was false];

(c) at the time [*name of witness*] testified, [he] [she] knew the testimony was false; and

(d) the false testimony was material to the matter before the [court] [grand jury]; that is, the testimony had a natural tendency to influence, or was capable of influencing, the actions of [*specify, for example:* the grand jury].

*(See Manual of Model Criminal Jury Instructions For The District Courts of The Ninth Circuit, Instruction 24.15 Subornation of Perjury (18 USC 1622), 2022 Edition, Last Updated June 2026.)*

There is no evidence present in this matter that suggests that Mr. Ruta actively persuaded Mr. Winiewski to testify falsely or that Mr. Ruta intended to deceive the jury through Mr. Winiewski's testimony. United States Probation, with no evidence to support its argument concludes "the defendant knew that Winiewski was going to falsely testify that the defendant had no knowledge of the drugs, as this was presented to the jury prior to the testimony being given." First, this is not the correct standard of proof, but even if it were the correct standard of proof, no acts of Mr. Ruta are offered to support the allegation because there are none. Where is the evidence that Mr. Ruta actively persuaded Mr. Winiewski to do anything, let alone testify and testify falsely. Where is the evidence that Mr. Ruta and Mr. Winiewski somehow

communicated with each other to discuss putting forth false testimony or otherwise discussed obstructing the trial through false testimony. There is no such evidence.

Contrast Mr. Ruta's case with *United States v. Rudisill*, 187 F.3d 1260 (11th Cir. 1999), cited by the government in its objection to the initial PSR in support of its position to convince United States Probation to include this enhancement. *Rudisill* is not cited by United States Probation presumably because it is not analogous to Mr. Ruta's case, which it is not. In *Rudisill,* the evidence showed the defendant met with his co-defendant in an Atlanta hotel, brought him cash, and encouraged his co-defendant to flee a grand jury subpoena and become a fugitive rather than provide the grand jury with testimony. In *Rudisill* the facts regarding meeting with co-defendant, paying him money, and encouraging the co-defendant to avoid the grand jury comprised the necessary evidence that the defendant <u>actively</u> <u>persuaded</u> a co-defendant to obstruct justice by absconding. There is no such evidence in Mr. Ruta's case.

Also, the government in its initial objection to the PSR cited United States v. Singh, 291 F.3d 756 (11th Cir. 2002). However, this case is also not analogous because the alleged obstructive conduct was the defendant's own trial testimony, not the testimony of a witness.

Further, the Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall … be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; ***to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his***

***defence."*** *See U.S.C.A. Const. Amend. VI-Jury Trials*. The inclusion of a sentencing enhancement against a defendant for suborning perjury when he simply calls a witness to testify at his trial, without having actively persuaded false testimony, is contrary to the law and to find otherwise is violative of the fundamental right to counsel and would have a chilling effect on all defendants for fear that calling a witness alone would result in a harsher sentenced if the jury finds him guilty after trial.

## II. 18 U.S.C. § 3553(a) VARIANCE REQUEST

If the Court does not find Mr. Ruta qualifies for a mitigating role under the rigid framework of the guidelines, Mr. Ruta asks the Court to consider his lesser role in conjunction with other mitigating factors and grant him a variance from his guidelines sentence as discussed below. "[A]fter *Booker,* a district judge can fairly consider policy statements concerning departures and fairly decide to impose a non-Guidelines sentence without definitively resolving close questions regarding the precise meaning or application of a departure policy statement." *United States v. Canova*, 412 F.3d 331, 358 n. 28 (2d Cir. 2005). Mr. Ruta requests a downward variance pursuant to 18 U.S.C. § 3553 based on the following factors:

a. <u>The Nature and Circumstances of the Offense, including Mr. Ruta's motive and limited role, Section 3553(a)(1)</u>

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States*, 131 S.Ct. 1229, 1240

(2011) (citing *Koon v. United States*, 518 U.S. 81, 113, 116 (1996)). As is the case with nearly every federal offense, the nature and circumstances of Mr. Ruta's offense is serious. However, Mr. Ruta asks the Court to consider his specific offense conduct with other mitigating factors and grant him a variance from his guidelines sentence.

*Limited Role In the Offense*

As set forth above in support of a mitigating role adjustment, there is no question that this conspiracy involved other more culpable conspirators whose conduct was not only relevant but would have been instrumental in the planning and coordination of the drug venture.

b. <u>The History and Characteristics of the Defendant, Section 3553(a)(1)</u>

As the Supreme Court reiterated, "the punishment should fit the offender and not merely the crime." *Pepper*, 131 S.Ct. at 1240 (citations omitted). If a person's "immediate misconduct" should ever be "assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance." *United States v. Adelson*, 441 F.Supp.2d 506, 513-514 (S.D.N.Y. 2006). Mr. Ruta, despite his lack of higher education, is very capable and would like the court to consider his past as well as the family he left behind and fashion a sentence that allows him to regain a future for himself and his family.

c. <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense, Section 3553(a)(2)(A)</u>

The seriousness of this offense was immediately realized when Mr. Ruta was arrested and detained at sea on March 22, 2025, and then eventually housed at the

Hernando County jail with limited resources and limited contact with family. Mr. Ruta will be punished in ways other than the traditional prison sentence including incarceration in a foreign country where his family will never visit him. Mr. Ruta has limited money for commissary or for making calls to his family and this isolation will continue during his prison sentence. "[A] sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall v. United States*, 552 U.S. 38, 54 (2007).

Mr. Ruta is aggrieved knowing his arrest put his family in a worse position than before. Now, they have lost the wages he provided. The Bureau of Prisons will provide Mr. Ruta a roof, a bed, and food. Unfortunately, Mr. Ruta's family will bear the burden of his incarceration as they slip into poverty. *See United States v. Jebara*, 313 F.Supp.2d 912, 917 (E.D.Wis. 2004) (departure warranted to avoid "needless suffering" of family).

d. <u>The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct, Section 3553(a)(2)(B) and the Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant, Section 3553(a)(2)(C)</u>

While it is impossible to divine at what threshold a particular sentence will have a deterrent effect on Mr. Ruta and the community at large, any prison sentence for someone like Mr. Ruta who has no prior criminal history is a strong deterrent. An outsider viewing Mr. Ruta's situation would not conclude he escaped penalty or that his life has not been substantially impacted by imprisonment in a foreign country.

For deterrence, the length of the sentence is not as important as the awareness of the risk of capture. Certainty of punishment is a much better deterrent than severity. *See* Steven N. Durlauf & Daniel S. Nagin, *Imprisonment and Crime: Can Both be Reduced?*, 10 Criminology & Pub. Pol'y 13, 37 (2011) (deterrence is achieved with certainty of punishment, not its severity); *see also* Raymond Pasternoster, *How Much Do We Really Know About Criminal Deterrence*, 100 J. Crim. L. & Criminology 765, 817 (2010)([I]in virtually every deterrence study to date, the perceived certainty of punishment was more important than the perceived severity). Also, the deterrence factor alone should not justify a lengthier sentence and must be balanced against other factors which mitigate against putting someone like Mr. Ruta in prison for an extended period of time. He has not displayed any characteristics evincing a threat to the public or shown that he is beyond rehabilitation. *See, e.g., United States v. Sayad*, 589 F.3d 1110, 1118-1119 (10th Cir. 2009) (finding downward variance reasonable where defendant was "good candidate for rehabilitation" based on defendant's recognition of seriousness of offense, strong family support, letters from the community, and lack of drug or sociopathic problems).

When prison sentences are relatively short, offenders are more likely to maintain their ties to family, employers, and their community, all of which promote successful reentry into society. Lin Song and Roxanne Lieb, *Recidivism: The Effect of Incarceration and Length of Time Served*, OLYMPIA, WA: WASHINGTON STATE INSTITUTE OF PUBLIC POLICY (1993). Conversely, when prisoners serve longer sentences, they are more likely to become institutionalized, lose pro-social contacts in

the community, and become removed from legitimate opportunities, all of which promote recidivism. Thomas Orsagh and Jong-Rong Chen, *The Effect of Time Served on Recidivism: An Interdisciplinary Theory*, JOURNAL OF QUANTITATIVE CRIMINOLOGY, 4(2):155-171, 1988.

## III. REQUESTED RECOMMENDATIONS FROM THE COURT TO THE BOP

Mr. Ruta requests to be placed at FCI Coleman and would like to earn his G.E.D., learn the English language, and participate in UNICOR as he is skilled in HVAC.

## IV. CONCLUSION

Mr. Ruta respectfully requests that the Court, after consideration of the factors set forth in this Memorandum, apply a mitigating role adjustment or use its inherent discretion and vary downward to the minimum mandatory sentence of ten years (120 months). If the Court were to apply a -2 level mitigating role adjustment, decline to impose an enhancement for obstruction of justice, and apply a -2 level variance under 18 U.S.C. § 3553, the following offense level would result:

Base Offense Level: 32

(For a Defendant that has a base offense level greater than 34 and received an adjustment under 3B1.2 for a mitigating role, a cap base offense level of 32 applies. 2D1.1(a)(5)

Minus 2 levels for mitigating role: 30

Minus 2 levels for Zero Point Offender: 28

| | | |
|---|---|---|
| Minus 2 Variance: | 26 | |
| Total Offense Level: | 26 | (63-78) |

Respectfully submitted,

By: /S/ Wes Trombley

TROMBLEY & HANES, P.A.
707 North Franklin Street, 10th Floor
Tampa, Florida 33602
Telephone: (813) 229-7918
Facsimile: (813) 223-5204
wtrombley@trombleyhaneslaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of August 2026, I electronically filed the foregoing with the clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

*All counsel of Record* including
Jospeh Ruddy, Assistant United States Attorney
The United States Attorney's Office
400 North Tampa, Suite 3200
Tampa, Florida 33602